McCAIN, Judge.
This appeal questions the correctness of a final order construing a will and codicil insofar as it declared invalid certain bequests of income from a trust.
The will and codicil of Charles N. Mc-Cune, deceased, provided for a trust to be known at “Trust B.” The income from the trust was to be paid to decedent’s sister and to eleven other named beneficiaries in designated percentages.
The codicil stated that should any of the male beneficiaries predecease either the testator or his sister, his widow would receive his share of the income.
During the life of the sister if any of the eleven beneficiary lines should run out, either upon the death of a named female or of a named male not leaving a widow, or the death of a widow of a named male, then the income previously paid to that beneficiary would be divided *57 equally among the surviving beneficiaries. This equal division upon a beneficiary’s death applies only during the sister’s life and should not be confused with the disposition of income if a beneficiary line runs out after the death of the sister. This latter provision is discussed below.
Upon the death of the sister the 20% of the corpus from which her income portion had been drawn passed into “Trust C,” a charitable trust. The remaining corpus continued in Trust B with the eleven named beneficiaries receiving slightly altered percentages so that the total would again amount to 100% of the income. Again the codicil provided that widows of the male beneficiaries would receive the same percentage of the income that their husbands would have. Trust B was to continue until the death of the last surviving beneficiary, whether it be one of the named individuals or a widow of one of the males. Upon the death of the last survivor the corpus of Trust B, which of course amounted to 80% of its original principal, was then to pass into Trust C. Upon the death of each individual beneficiary (or his widow) his share of the incom'e would go directly to Trust C.
It should be noted that at one place the codicil did indicate that as each beneficiary died a proportionate amount of corpus would pass into Trust C.[1] Other provisions of the will[2] and codicil,[3] as well as the trial court’s order, make it clear, however, that only the income was intended to pass and that the entire corpus would not go into Trust C until the death of the last surviving beneficiary.[4]
The order of the trial court found the bequests of income rights to the widows of the named male beneficiaries (of whom there were eight) to be invalid as too indefinite a class gift and as violative of the rule against perpetuities. We cannot agree.
A class gift is a gift of an aggregate sum to a group of persons whose .exact identity and number are to be determined sometime after the execution of the will. The relative amounts of the shares of the class members are in some *58 definite proportion and the absolute size of the various shares depends upon the number of persons ultimately in the class. '96 C.J.S. Wills § 692. Here there is no aggregate sum to be divided among the widows. Each widow is to take individually for life the income interest previously her husband’s. The interest of any given widow is independent of that of the others. There is no class gift, but rather, following the life income interest of each of the eight male beneficiaries is a contingent income interest in his widow. Such a bequest is perfectly valid even though the identity of the remaindermen cannot yet be determined. The term widow is sufficiently precise so that upon the death of any of the named males the identity of his widow, if any, can be readily determined.
Nor do the interests given the future widows violate the rule against per-petuities. Simply stated, to be valid under the rule a contingent future interest must vest on or before the expiration of a life or lives in being plus twenty-one years plus the period of gestation. Adams v. Vidal, Fla.1952, 60 So.2d 545; Story v. First National Bank and Trust Company, 1934, 115 Fla. 436, 156 So. 101. At the time of the testator’s death all of the named male beneficiaries were lives in being. The contingent interests of their wives would vest, if at all, at the death of the husbands, well within the period allowed by the rule.
The disputed provisions of the will and codicil are therefore valid, and accordingly, the order appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.
We have considered the other points on appeal and find them to be without merit.
Reversed and remanded.
NELSON, JAMES T., Associate Judge, concurs.
CROSS, J., concurs in conclusion.

. “Upon the death of each of the aforesaid beneficiaries, the share of the trust, the income from which he or she then was- or would have been entitled, shall become a charitable trust * * * provided, however, that should any of the male beneficiaries named above predecease me, or die during the life of the trust, leaving a widow surviving, his share of the income shall, during the life of his widow, be paid to her.”

. In prescribing what would constitute the corpus of Trust O the will provided:

“ITEM VI. TRUST C.

“This Trust will embrace property as follows:
“1. [Inapplicable]
“2. Twenty percent (20%) of the property embraced in TRUST B above described, upon the death of my said sister, BESSIE M. LARNTZ.
“3. Income from portions of TRUST B under circumstances hereinabove noted.
“4. Property embraced in TRUST B, upon the death of the survivor of the individual beneficiaries thereof.”

. “Upon the death of my said sister, or if she should predeceased me, then upon my death, the portion which constituted, or would have constituted, her portion of the Trust shall become a charitable trust and shall be held, administered, used and disposed of by my said Trustee in the manner and for the purposes set forth in ITEM VI hereof. The remaining portion of the Trust shall continue until the death of the survivor of the beneficiaries named above in Items 2 to 12, inclusive. Upon the death of the survivor of said beneficiaries the trust assets shall become in their entirety a charitable trust and shall be held, administered, used and disposed of by my Trustee in the manner and for the purposes set forth in ITEM VI hereof. * * * ”

.Although the terms of the codicil would control those in the will where there was a conflict, here the codicil itself contains contradictory language. By resorting to the will as well as the codicil it is clear that the testator’s overall intent was to have the corpus of Trust B (excluding the 20% generating income to the sister) remain intact until the death of the last surviving income beneficiary.