334 So.2d 135 (1976)
ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Appellant,
v.
Bernhard BAER and Yetta BAER, Appellees.
No. 75-610.
District Court of Appeal of Florida, Third District.
June 8, 1976.
Rehearing Denied July 9, 1976.
Weissenborn, Burr & Hyman, Podhurst, Orseck & Parks, Miami, for appellant.
Horton, Perse & Ginsberg, Brumer, Moss, Cohen & Rodgers, Miami, for appellees.
Before BARKDULL, C.J., and HENDRY, J., and CHARLES CARROLL (Ret.), Associate Judge.
PER CURIAM.
This appeal by Allstate Insurance Company, the plaintiff below is from a declaratory judgment determining the limits of uninsured motorist coverage included in automobile liability indemnity policies which had been issued by the appellant to the appellees.
On or about September 22, 1973, the insurer notified the insureds, in writing, that as required by law the limits of the uninsured motorist coverage in the policies would be increased to equal the limits of the liability coverage, on October 1, 1973, unless the insureds rejected the increase in writing. Each policy provided $100,000.00 and $300,000.00 liability and $10,000.00-$20,000.00 uninsured motorist coverage. The insureds did not so reject the increase.
*136 In the declaratory judgment action brought by Allstate against the appellees, Allstate contended the increase did not thereby occur. The defendants contended otherwise. The court held the increase became effective. Allstate appealed.
The notice sent by Allstate to the insureds, a short time prior to October 1, 1973, and which was received by them and upon which they concluded not to reject the indicated increased coverage, was as follows:
"New Requirements For Uninsured Motorist Coverage
"The insurance law in Florida requires that we make a change in the coverage of many of our policyholders.
"Beginning October 1, 1973, the law states that we must include Uninsured Motorist Protection in your policy. This coverage must be in the same limits as your Bodily Injury Liability limits.
"If you already have Uninsured Motorist Protection  we will increase your limits to equal your Bodily Injury Liability limits.
"If you now carry no Uninsured Motorist Protection, we will add it to your policy  with limits equalling your Bodily Injury Liability limits.
"The additional charge will be included in your premium.
"However, under the law you do have the opportunity to reject the changes in your coverage that we are required by law to make. You can decide to reject the coverage completely, or to have lower limits.
"You have the right to reject these changes  it must be in writing! You have the right to reject this coverage, or to select lower limits. But we must receive written notice from you. Otherwise your coverage will include the changes in your Uninsured Motorist Protection, or the addition of that coverage to your policy.
"If you choose to reject the changes we are required by law to make, just check the box that informs us of what you want done, sign the form and return it to us in the enclosed envelope.
"If you have any questions about this change or any other insurance matter, just see your agent or call our nearest office." (Emphasis by Allstate).
Appended thereto was a detachable card to be mailed to Allstate by the insureds in event they should desire to reject the increased coverage. At the trial there was evidence that the insureds were aware of the notice prior to October 1, 1973, and chose not to reject the increased coverage. Additionally Bernhard Baer testified as follows:
"Q. Now, when you read this what was your inclination as to what you had to do about it? A. That in order to receive maximum coverage on uninsured motorist I had to do nothing. Q. Effective October 1st, 1973, you had it?
A. That's right.
* * * * * *
Q. In 1972 were you ever given the opportunity to accept or reject a higher uninsured motorist limit equal to your liability policy? A. No. Q. If you had been given that opportunity would you have declined it or accepted it? A. 1 would have accepted it."[1]
When the trial court had before it the above notice from Allstate to the insureds and the evidence relating to their purposeful *137 non-rejection of the increased coverage, that was the case  and all that remained was for the court to determine the legal effect thereof. The extensive discovery and litigation of collateral matters, involving the expenditure by counsel of hundreds of hours in this case, were needless and amounted to overtrial of the action.
We affirm the holding of the trial court declaring the increase in limits of uninsured motorists coverage in the policies went into effect, as Allstate had notified the insureds it would, on October 1, 1973.[2] That legal effect of the transaction could not be altered by the circumstance that an accident occurred after October 1, 1973, on the basis of which a claim or claims could be made involving the increased coverage. Allstate selected the method and procedure for putting such increased coverage into effect, and, as the trial court held, it was not in a position to disclaim the result it had intended and effectively accomplished.
By an order supplementing the judgment, the court determined the fee to be paid by Allstate for the services of the defendant's attorneys. Allstate's appeal contends the fee allowance was grossly excessive. We agree. The question presented for determination by declaratory judgment was one of legal construction to be made by the Court, based on the written notice given by Allstate to its insureds and the handling thereof by the insureds. The insurance company should be required to pay only a reasonable fee for services of the insureds' attorneys in the handling of the case that were reasonably and necessarily required, but not for services that went beyond that which was called for. The judgment or order awarding the attorney fees is hereby modified to reduce the allowance for attorneys' fees to $15,000.00, as the amount provided by the judgment to be paid by Allstate.
The judgment, including the supplement thereto relating to attorney fees as above modified, is affirmed.
NOTES
[1] In 1971 Chapter 71-88 amended § 627.0851 (1) Fla. Stat., F.S.A. to require that such policies issued on or after January 1, 1972 should include uninsured motorist coverage in limits no less than the liability insurance limits therein, unless rejected by the insured.

Appellees policies which had been obtained by them prior to 1972, were not affected by the above amendment.
[2] Section 627.727(1) Fla. Stat., F.S.A. (in the form in which its predecessor section 627.0851 (1) had been amended by Ch. 71-88) was further amended by Chapter 73-180(3), by adding a provision that an insured, without rejecting uninsured motorist coverage, could select limits thereof less than the liability insurance policy limits.

That amendment of 1973 was made applicable to policies "delivered, issued for delivery or renewed in this state with an inception on or after October 1, 1973."
Thus, the 1973 amendment did not have reference to the policies held by the appellees. The fact that Allstate effectively brought about the increases of the limits of the uninsured motorist coverage in appellees' policies as of October 1, 1973, under the mistaken impression that the 1973 amendment was applicable and required such, was not material, and could not serve to nullify such action of Allstate and the effect and result thereof.